IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| DIANA ROSE WILLIS, | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 9:14-CV-71 |
| | § | |
| PILGRIM'S PRIDE CORP., | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

In accordance with 28 U.S.C. § 636(b) and the Local Rules for the United States District Court for the Eastern District of Texas, the District Court referred the above-captioned civil action to the undersigned United States Magistrate Judge and the parties consented to proceed before the undersigned. (Doc. No. 4 & 29.) Pending before the Court is the defendant Pilgrim's Pride Corporation's Motion for Summary Judgment (Doc. No. 35) and Plaintiff Dianna Rose Willis's, *proceeding pro se*, Response to the Motion for Summary Judgment. (Doc. No. 39.)

## I.
## Background

Willis was employed with Pilgrim as a second processor/general laborer in November 2012. (Doc. No. 28.) Willis filed a complaint against Pilgrim alleging she was improperly paid for the hours she worked, was harassed by her co-workers based on her color and national origin, and was constructively discharged from her employment in March 2013. (Doc. No. 28.)

Pilgrim contends that it properly paid Willis all hours she worked and was unaware of any alleged harassment. (Doc. No. 28.) Further, Pilgrim contends that Willis was involved in a physical altercation at work, which required she take a drug test pursuant to Pilgrim's policies

1

and procedures. (Doc. No. 28.) In lieu of taking the drug test Pilgrim contends that Willis resigned her employment with Pilgrim. (Doc. No. 28.) Willis contends that she was harassed, improperly compensated, subject to a hostile work environment, and was ultimately constructively discharged. (Doc. No. 1.)

Pilgrim provided Willis a copy of its Non-Discrimination and Harassment Policy, Workplace Violence Policy, Code of Conduct, and Drug and Alcohol Program when she began her employment with Pilgrim for the second time on November 15, 2012. (Doc. No. 35.) Willis acknowledged that she signed for the policies. (Doc. No. 35, at 198.) Pilgrim contends that Plaintiff did not report any harassment to Pilgrim in accordance with any of the policies nor did she inform any employee of Pilgrim of the alleged harassment. Pilgrim contends that Willis poked another employee in her back with a pair of scissors during work hours on March 5, 2013. (Doc. No. 35). Pilgrim alleges that at approximately 3:15 a.m. on March 6, 2013 the two employees engaged in a physical altercation and Willis was hit by the other employee. (Doc. No. 35.) Pilgrim claims that both Willis and the other employee were taken for post-accident drug testing in accordance with Pilgrim's Drug and Alcohol Program. (Doc. No. 35.) Plaintiff twice tested positive for alcohol and refused to take the drug test. (Doc. No. 35.) Willis resigned after the refusal to take the drug test according to Pilgrim. (Doc. No. 35.)

Pilgrim moved for summary judgment on all of the Plaintiff's claims, including hostile work environment, discrimination, constructive discharge, and improper compensation. (Doc. No. 35.)

**II.
Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the non-movant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the non-moving party's case. *Stults v. Conoco, Inc.,* 76 F.3d 651, 655 (5th Cir.1996). Once, the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor unsubstantiated assertions" will satisfy the non-movant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas,* 833 F.2d 565 (5th Cir.1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams,* 836 F.2d 958, 961 (5th Cir.1988). Under this standard, fact questions are considered with deference to the non-movant. *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). The evidence of the non-movant is to be believed and all inferences are to be drawn in his favor. *Anderson v. Liberty Lobby,* 477

U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.,* 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University,* 80 F.3d 1042, 1048 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d at 1075). An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

**Pro Se Considerations**

As Willis is proceeding *pro se*, her response to the motion for summary judgment will be liberally construed. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). However, "*pro se* litigants must "still comply with the rules of civil procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir.1999) (per curiam) (unpublished table decision). While courts are more lenient with pro se litigants, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law," *Hulsey v. Texas,* 929 F.2d 168, 171 (5th Cir.1991), and "[t]hose who venture into federal court without the assistance of counsel cannot ... be permitted to enjoy much or protracted advantage by reason of that circumstance." *Brinkmann*

*v. Johnston,* 793 F.2d 111, 113 (5th Cir.1986). Courts have no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir.2006).

## III.
## Discussion and Analysis

**A. Has the movant demonstrated the absence of a genuine issue of material fact on her hostile work environment claim?**

A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. To establish a claim of hostile work environment under Title VII, a plaintiff must prove she (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 651–52 (5th Cir. 2012)(*quoting Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir.2002)).

Willis' deposition testimony states that she is half Hispanic and half African-American and therefore would belong to a protected group as a Hispanic and as an African-American. (Doc. No. 35, at 207.) The unwelcome harassment appears to consist of three incidents: 1) an African-American woman saying "hi" to Willis, 2) an African-American woman hitting her in the parking lot, and 3) a pay discrepancy for a day of work. (Doc. No. 35.)

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* Workplace conduct "is not measured in isolation." *Id.* In order to

deem a work environment sufficiently hostile, "all of the circumstances must be taken into consideration." *Id.* This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted).

Willis has specified three incidents of harassment that she contends are severe enough to affect her employment at Pilgrim. (Doc. No. 1.) The first incident was described in Willis deposition testimony and consists of an African-American woman saying "hi" to Willis. (Doc. No. 35, at 207.) Willis states that the discrimination occurred because the woman "shouldn't have said hi" to her as "she wasn't the same nonsecular [sic] person" and that "[n]obody should say hi to you unless they're the same." (Doc. No. 35, at 207.) There is no allegation or evidence to show that the "hi" comment was accompanied by a racially derogatory term, comment or otherwise was related to Willis' race. The "hi" incident does not rise to the level of plainly offensive nor could it support a hostile work environment claim as it is a customary greeting without an objective offensive nature.

The second incident wherein Willis was hit by a co-worker does show hostility towards Willis. Willis described the incident in her deposition testimony as a "girl hit me and I had to resign because she said, '[y]ou did this and I'm going to do this." (Doc. No. 35, at 196.) Willis further testified that the woman "said that I stabbed her with a pair of scissors, and then she hit

6

me, and then I resigned," she further added that she "had to resign because she was assaulted." (Doc. No. 35, at 196.) The testimony shows that the incident does appear to involve a form of assault; however, it did not show a harassing action based on race. Willis must show that the harassment was based on her race or she cannot sustain a Title VII claim.

The third incident over a payment discrepancy has also not been linked to Willis' race. The payment or lack of payment by Pilgrim over a holiday or workday was not shown to be motivated by Plaintiff's protected class. Pilgrim claims to have addressed the pay issue with the Plaintiff and investigated the hitting incident. The pay incident was discussed in Willis' deposition testimony, wherein Willis testified that she believed she was not correctly paid. (Doc. No. 35, at 12.) In the deposition, Willis recalls that she met with an employee of Pilgrim and advised Pilgrim that she was underpaid. (Doc. No. 35, at 12.) Pilgrim did not agree that she was incorrectly paid; claiming the day in question was Thanksgiving and an unpaid holiday. (Doc. No. 35, at 12.) Willis did not agree with Pilgrim's finding and disputed that it was Thanksgiving. (Doc. No. 35, at 12.) The payment discrepancy has not been factually proven to be an unwanted harassment that was associated with Willis' race, nor did it affect a condition of her employment, and her employer had a meeting with to try to resolve the incident.

The three incidents taken together must show harassment that is "sufficiently severe or pervasive" to prove "an abusive working environment" at Pilgrim. *See Ramsey,* 286 F.3d at 268. To show that the harassment affected a term or condition of her employment, Willis must establish more than conduct that is offense, she must show an environment that a reasonable person would find hostile or abuse. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367 (1993). Whether an environment is "hostile" or "abusive" can be determined only by looking at

7

all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is relevant to determining whether the plaintiff actually found the environment abusive. *Id.* However, while psychological harm, like the other relevant factor, are taken into account, no single factor is required. *Id.* The harassment has to show that it affected "a term, condition, or privilege" of the "victim's" employment. *Ramsey,* 286 F.3d at 268.

Willis has not shown that the three instances constitute harassment due to her race; or that it affected a term, condition or privilege of her employment. She is unable to establish a high frequency of incidents or show that they were "extremely serious" to the point that they rise to the level of severity and pervasiveness necessary to support a hostile work environment claim. Out of three incidents, only the hitting incident would arguably constitute threatening behavior that could interfere unreasonably with Willis' work performance. However, the severity of any of the three incidents, including the hitting incident is minimal, when looking at the totality of the circumstance. Namely, the hitting incident stemmed from Willis' allegedly stabbing the woman first with a pair of scissors. (Doc. No. 35, at 196.)

The "hi" incident is neither threatening nor offensive. Nor has the pay issue shown to be threatening or offensive. Willis has not shown how any of the three incidents affected a term of her employment. The conditions of her employment were not altered or affected nor was the conduct complained of both objectively and subjectively offensive. The incidents may have been uncomfortable or inappropriate to Willis subjectively, but objectively the incidents do not

show an abusive working environment that altered the conditions of Willis' employment. Willis herself altered the conditions of her employment by terminating her employment after the hitting incident. However, Willis admits that she terminated her employment immediately after refusing to take the mandatory drug test. (Doc. No. 35, at 206.)

Willis has acknowledged in her deposition that her employer did not know of the alleged harassment; however, should Pilgrim have known of the harassment in question and did it fail to take prompt remedial action? An employee's decision to refrain from informing the employer about the harassment will be excused "once it becomes objectively obvious that the employer has no real intention of stopping the harassment," as such reporting is a "wasted motion." *Woods v. Delta Beverage Grp., Inc.,* 274 F.3d 295, 300–01 (5th Cir.2001). Willis does not assert that any complaint would have been futile because Pilgrim knew about the harassment and failed to stop it; however as she is *pro se* her pleadings are read liberally. Despite Pilgrim's lack of actual knowledge, an employer may have constructive knowledge when the harassment is pervasive. *Sharp v. City of Houston,* 164 F.3d 923, 930 (5th Cir.1999). A holding that an employer had constructive knowledge will be less likely if it had in place a procedure by which employees could report instances of harassment. *Id.* Pilgrim attached evidence to its Motion that it provided Willis with an employee manual which explained the procedures an employee should follow when harassed. Willis admits that he did not follow these procedures and states that she did not inform anyone about the discrimination in her deposition. (Doc. No. 35.)

However, Pilgrim did know about two of the three incidents, namely the pay discrepancy and the hitting incident. Willis specifically discussed the hitting incident with Pilgrim. Willis testified in her deposition that she immediately reported the incident to Pilgrim and filled out a

9

report about the incident. (Doc. No. 35.) Pilgrim ultimately terminated the employee who hit Willis. (Doc. No. 35.) Willis also admitted in her deposition that she decided to quit her job at Pilgrim after the hitting incident in lieu of taking the mandatory drug test that was required because of the incident. (Doc. No. 35.) There is no evidence to support that management would have known that these incidents constituted discrimination/harassment to Willis based upon her color and/or national origin. Pilgrim appears to have acted when incidents were brought to its attention rather than ignoring them. The evidence does not support that reporting the harassment was excused as it was futile.

The incidents Willis asserted constitute harassment/discrimination based upon her color and/or national origin are collectively insufficient to avoid summary judgment. *Id.*

### B. Has the movant demonstrated the absence of a genuine issue of material fact on her constructive discharge claim?

Pilgrim contends that Willis struck another employee in her back with a pair of scissors during work hours on March 5, 2013. (Doc. No. 35.) In the early morning hours the following day, the two employees were again involved in a physical altercation wherein Willis was hit by the other employee. (Doc. No. 35.) Pilgrim tested Willis for alcohol and she had a positive result; she was retested and again had a positive finding. (Doc. No. 35.) Pilgrim advised both Willis and the other employee they were required to take post-accident drug testing in accordance with Pilgrim's Drug and Alcohol Program. (Doc. No. 35.) Willis refused to take the drug test. (Doc. No. 35.) Willis resigned immediately after the refusing to take the drug test. (Doc. No. 35.) Pilgrim's position is that Willis cannot show that her voluntary resignation was actually a constructive discharge. To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a

reasonable employee would feel compelled to resign. *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir. 1994). Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but the following factors are considered: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not. *Id.* Willis testified that the woman who hit her actually told her that she was going to hit her because Willis stabbed her with a pair of scissors. (Doc. No. 35, at 12.) Willis' own description is more likened to a drawn out altercation between two employees rather than race based harassment. Moreover, it involves an action between two employees, not a supervisor. Willis did not establish any of the factors to show a constructive discharge claim. Specifically, she did not show that she received: a demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation calculated to encourage her resignation; or (7) offers of early retirement on terms that would make her worse off whether the offer was accepted or not. There is no evidence that Willis felt compelled to resign beyond the insinuation that she did not wish to take the drug test.

There is not genuine issue of material fact accordingly summary judgment is granted on all claims.

IT IS THEREFORE ORDERED that Defendant Pilgrim's Pride Corporation's Motion for Summary Judgment (doc. # 35) is GRANTED. Final Judgment will be entered by separate order.

**SIGNED this the 7th day of December, 2016.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE